### J. I. CASE THRESHING MACH. CO. v. DALLAS CHAMBER OF COMMERCE. (No. 7993.)

(Court of Civil Appeals of Texas. Dallas. Oct. 26, 1918.)

1. CORPORATIONS ⚓432(12)—AUTHORITY OF AGENT—CONTRACTS—EVIDENCE.

Evidence *held* insufficient to show that defendant threshing machine company's branch house manager had authority to sign an agreement that it would save plaintiff harmless from loss in promoting, financing, and conducting a national corn show.

2. CORPORATIONS ⚓432(12) — CONTRACTS — AUTHORITY OF AGENT—EVIDENCE.

That agent of threshing machine company signed his name as branch house manager was insufficient to show his authority to make agreement to save plaintiff harmless from loss in conducting national corn show, where there was nothing to show the character of the company's business or the extent of the agent's authority.

3. CORPORATIONS ⚓429 — TRANSACTIONS WITH AGENT—DUTY TO MAKE INQUIRY AS TO AUTHORITY.

Where the act by which a corporation is sought to be bound is out of the usual course of its business, those dealing with its agent are bound to inquire as to agent's authority and deal with him otherwise at their peril.

Appeal from District Court, Dallas County; W. F. Whitehurst, Judge.

Suit by the Dallas Chamber of Commerce against the J. I. Case Threshing Machine Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded for new trial.

Spence & Haven, of Dallas, for appellant. J. J. Eckford, of Dallas, for appellee.

RAINEY, C. J. Appellee brought this suit against appellant to recover on the following instrument:

"$1,000.00.　　Dallas, Texas, Oct. 2, 1913.

"In consideration of the Chamber of Commerce having contracted to hold at Dallas for two weeks in February, 1914, the National Corn Exposition, I, or we, agree to pay to the Dallas Chamber of Commerce, at its office in Dallas, on or before March 1, 1914, one thousand dollars ($1,000.00), or such part thereof as may be required to save the Chamber of Commerce harmless from loss in promoting, financing, and conducting said National Corn Show, and, if there is no loss, nothing will be payable hereunder. It is understood that I am obligated to pay hereunder only 1 per cent. of aforesaid loss actually incurred. All expenses are to be incurred under the direction of Henry Exall, J. J. Eckford, and C. W. Hobson. All receipts from gate, concessions, or otherwise are to be devoted to the liquidation of expenses incurred until said expenses are fully paid.

"J. I. Case Threshing Machine Co.,
"By W. C. Lemmon,
"Branch House Manager."

It was then alleged that the National Corn Exposition was held in Dallas, and that a loss was actually sustained thereby, and that by virtue of said obligation appellant became liable to pay 1 per cent. of loss, which amounted to $570.46. Appellant answered by general demurrer, general denial, and a plea of non est factum, denying the authority of W. C. Lemmon to bind appellant for the payment of any such loss. Supplemental pleadings were filed by the plaintiff and defendant, and practically only one issue was presented for decision, and that, in effect, was whether or not Lemmon was authorized to bind the company for the loss so sustained. The court instructed a verdict for appellee, and the jury so found. Judgment being rendered for appellee, an appeal was perfected by appellant.

[1] Appellant requested the trial court to instruct a verdict in its favor, which was refused, to which action of the court appellant excepted, and complains of the action of the court in instructing a verdict for appellee, and submits that Lemmon was unauthorized to sign such contract, and that "the party dealing with an agent of a corporation must, at his peril, ascertain what authority the agent possesses and is not at liberty to charge the corporation by relying upon the act of the agent." The evidence tends to show that appellant maintained a branch house at Dallas, Tex., with W. C. Lemmon as agent, who transacted business for appellant as "Branch House Manager." As said, he had been in charge of said house and conducting its business for several years. He was a member of the Dallas Chamber of Commerce; the membership dues being paid by checks of the appellant company. When the note sued on was sent to the secretary of the Chamber of Commerce, it was accompanied by a letter stating as follows:

"Dallas, Texas, Oct. 22, 1913.

"Mr. J. R. Babcock, Sec'ty., Chamber of Commerce, Dallas, Texas—Dear Sir: Inclosed find our company's guaranty of $1,000.00 for promoting the National Corn Exposition. In signing and sending this guaranty on the part of our company, the writer has done so in his own motion, and we will get our general manager and sales manager, both of whom are expected to be here this week, to approve the writer's action, as it is necessary to submit these matters for their approval. In case the general manager does not approve of the writer's action, it will be necessary for us to ask the return of this obligation. However, the writer believes the company will do their part in helping to promote the Corn Exposition.

"Yours very truly,
"J. I. Case Threshing Machine Co.,
"W. C. Lemmon,
"Branch House Manager."

The agents of the J. I. Case Threshing Machine Company never notified the Chamber

---

⚓For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

of Commerce that said company would not pay said obligation until W. C. Lemmon wrote the following letter:

"Dallas, Texas, March 19, 1914.

"Mr. J. R. Babcock, Secretary National Corn Exposition Dept., Dallas Chamber of Commerce, Dallas, Texas—Dear Sir: We are just in receipt of your favor of the 18th, addressed to our company, for the attention of the writer, in which you call for assessment of 30 per cent. of our company's guaranty. Now, for your information, will state that under date of October 22, 1913, if you will refer to our letter of that date, you will see that this guaranty was given by the writer, with the understanding that it was necessary, in order to make it binding on our company, to get our general manager's approval of the same. We inclose you copy of our letter under date of March 4, 1914, all of which you will find self-explanatory. The writer regrets that our company did not see fit to approve his actions. They have declined to do so; hence we will kindly ask that you return to us our guaranty and oblige.

"Yours very truly,
"J. I. Case Threshing Machine Co.,
"W. C. Lemmon,
"Branch House Manager."

[2, 3] We are of the opinion that the evidence adduced in this case was insufficient to warrant an instruction that W. C. Lemmon was authorized as agent to sign the obligation sued on, and that it was binding on the appellant for said amount. There is no evidence in the record showing what were the powers granted to him by the company, nor does it show what was the nature of the company's dealing, what kind of business it transacted, nor that the obligation signed by Lemmon was along the line he was to transact, or that there had been similar transactions customarily done as to warrant such act to come within the authority granted to him. The mere fact that Lemmon signed his name as "Branch House Manager" is not sufficient to show his authority, when there is nothing to show the character of business the company was doing, or what Lemmon's authority was. W. C. Lemmon, when he delivered the note to Babcock, secretary of the Chamber of Commerce, notified him that the note and its execution by him was not to be binding unless ratified by the general manager of the J. I. Case Threshing Machine Company, and after Babcock was informed that the company had declined to ratify and approve the obligation Babcock was not justified in assuming that said company would be bound to pay it. The act of Lemmon was not shown to be in the usual course of business, and the rule of law in such cases is as laid down in Manhattan Liquor Co. v. Magnus & Co., 43 Tex. Civ. App. 463, 94 S. W. 1117, which is thus stated:

"If the act by which the corporation is sought to be bound is out of the usual course of business of the concern, those dealing with the agent are bound to inquire as to the authority of the agent and deal with him otherwise at their peril."

The case just cited announces the principles of agency sufficiently, the facts therein being analogous to those in this case, and upon that case we rest our decision.

The evidence not showing the authority of Lemmon in running the business in Texas to make the contract sued on, we conclude that the case has not been sufficiently developed, and the judgment will be reversed, and cause remanded for a new trial.